IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Beth Feeley, *et al.*,                )
          Plaintiffs,                 )
                                      )
          v.                          )   Case No. 1:08cv1212 (GBL)
                                      )
Total Realty Management, *et al.*)    )
          Defendants.                 )

### MEMORANDUM ORDER

THIS MATTER is before the Court on Defendants Cooperative Bank and Frederick Willetts, III's Motion to Dismiss, Defendants Branch Banking & Trust Co. of South Carolina and BB&T Collateral Service Corporation's Motion to Dismiss, Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss, Defendants Bank of America, N.A. and Prlap, Inc.'s Motion to Dismiss, Defendant Maryville's Motion to Dismiss, Defendants Woodlands Bank and John T. Harris' Motion to Dismiss, and Defendants Beach First National Bank and Carolina First Bank's Motion to Dismiss.  Plaintiffs, a large number of individuals assert that they were lured by Total Realty Management into an investment in unimproved land in North Carolina and South Carolina that TRM asserted the individual investors could purchase with little or no money down and after the purchase flip or re-sell at a profit.  The Plaintiffs' allege that this "too good to be

1

true" investment was really a scheme between TRM, several banks, several bank mortgage officers, real estate developers and appraisers to defraud the investors of their funds.  Plaintiffs' investors ultimately did acquire property, however the land is not highly marketable at a profit in this downturn economy, and Plaintiffs' investors assert that TRM and the banks are liable to them for fraud, violation of the Interstate Land Sales Disclosure Act, conspiracy with bank officers and corrupted appraisers, and violation of the state unfair trade practices.  The Amended Complaint is 326 pages long, asserts 45 claims on behalf of 127 plaintiffs against 26 Defendants.  The key threshold question is whether the Amended Complaint states a plausible claim under *Ashcroft v. Iqbal*.  That is whether after 326 pages the Complaint succinctly states facts showing sufficient factual matter to state a plausible claim on its face where the Complaint fails to show facts supporting the claim that the Banks or mortgage companies made any affirmative representations of material facts upon which Plaintiffs could rely to their detriment which proximately caused Plaintiffs to suffer damages.

There are 5 issues before the Court.  The first issue is whether the Complaint's allegations that Banks colluded with corrupt mortgage loan officers and corrupt appraisers

2

to enter into risky loans that would fail sufficiently states a plausible claim.  The second issue is whether the Complaint states sufficient facts in support of the alleged agency relationships between the banks and developers and Total Realty Management ("TRM") where these agency relationships form the predicate for liability against these defendants.  The third issue is whether the banks are liable under the Interstate Land Sales Act ("ILSA") where the Act is explicitly applicable to developers, not banks.[1] The fourth issue is whether Plaintiffs claims alleging civil conspiracy to defraud and conspiracy to commit fraud are subject to the particularity requirements of Rule 9(b), and if so, whether Plaintiffs have made sufficient allegations to sustain this claim.  The fifth issue is whether the place of the wrong for purposes of an unfair trade practice claim is the location of the settlement or the location of Plaintiffs' residences.

The Court holds that the Complaint fails to state a claim against the banks and TRM as either co-conspirators or as parties involved in an agency relationship because there are insufficient allegations to support a plausible conclusion that the Banks would enter into risky loans

---

[1] The Court will also address whether the ILSA claims against developer Maryvile are plausible.

based upon knowingly false information so the banks would sustain a loss. The Court also holds that the Complaint contains insufficient factual allegations of agency demonstrating a relationship between TRM and the banks or TRM, Southeastern and Maryville because the Complaint is devoid of allegations that these alleged agents were operating under the control of the defendants, or that these entities were acting in the defendants' interest. With respect to the third issue, the Court grants the Defendant's Motion to Dismiss the claims against the banks under the ILSA because the Act is limited in application to developers, not banks, and there are insufficient allegations to support finding the banks liable as developers on the grounds that they exceeded the normal course of conduct. The Court grants the Defendant's Motion to Dismiss the conspiracy to defraud and conspiracy claims because the claims are not alleged with sufficient particularity as to the who, what, where, when, and why to meet the requirements of Federal Rule of Civil Procedure 9(b). The Complaint while long, is replete with broad brush general group allegations, group pleading which is not sufficient in fraud claims and the Amended Complaint is devoid of key factual allegations. The Complaint fails to allege facts that would support the requisite finding of a

meeting of minds for a conspiracy claim as opposed to mere
parallel conduct.  Finally, the Court grants the
Defendants' Motions to Dismiss the North and South Carolina
unfair trade practices acts claims, because the harm
Plaintiffs assert, the loss of their investment money or
credit occurred in the Plaintiff's states of residence,
none of the plaintiffs are North Carolina residents,
Plaintiffs have not met the requirement that the alleged
conduct impacts the public interest in order to state a
claim under the South Carolina Act, causes of action under
other states' unfair trade practices statutes have not been
asserted, and with respect to the Virginia Plaintiffs, the
Virginia Consumer Protection Act, precludes actions such as
these against banks.

## I. BACKGROUND

Presently before the Court is a 326 page Complaint with
45 Counts filed on behalf of 127 plaintiffs against 26
defendants.  The foundation of this action is Plaintiffs'
purchase from TRM of unimproved lots in North and South
Carolina for the purpose of resale.  Plaintiff investors
assert they met with representatives of TRM who presented
an investment opportunity where the plaintiffs could buy
unimproved land in area ripe for development with little or
no money down that the plaintiffs could easily resell at a

profit.  TRM promised to make it easy to invest and to take
care of arranging financing and closing for the investors.
These lots were located in three (3) subdivisions— two (2)
in North Carolina (Summerhouse on Everett Bay and
Cannonsgate on Bogue Sound); and one (1) in South Carolina
(Craven's Gate at Winyah Bay).  Plaintiffs' purchases were
financed by the following seven (7) banks, which are named
as defendants in this action: Bank of America, Carolina
First, Cooperative Bank, SunTrust Mortgage Inc., Branch
Banking & Trust Co., Woodlands Bank and Beach First
National Bank.[2]  In addition to bringing suit against the
banks and their trustees, Plaintiffs have also names as
defendants, TRM, Mark Dain (TRM Chief Executive Officer),
Mark Jalajel (TRM President), Michael McCracken (TRM Chief
Financial Officer), Cari Deuterman (TRM Vice President of
Finance), and Daniel Meier(TRM spokesperson).
Additionally, Plaintiffs have named as defendants,
developers involved with these properties as well as their
independent contractors and entities who received funds
from TRM.  Maryville, who has filed one of the motions to
dismiss presently before the Court is one such developer.
As of the date of this opinion,  TRM has been placed into

---

[2] The banks' trustees were also named as defendants in this action.

6

involuntary bankruptcy[3], Mr. Jalajel, Mr. Meier and Ms.
Deuterman have filed for bankruptcy, and Mr. Dain and Mr.
McCracken have failed to respond to the Second Amended
Complaint and Plaintiffs have filed motions for default
judgments against them.

Plaintiffs' Complaint alleges that TRM purchased
properties at fair market value prices and in turn
"flipped" the properties by selling them for a substantial
profit to Plaintiffs, promising Plaintiffs that they too
would be able to resell their properties at a profit.
(Second Am. Compl. ¶¶ 166, 122.)  According to the
Complaint, "TRM Representatives held themselves out as a
provider of a complete package of real estate services,
including not only being the seller, but also being the
real estate agent, mortgage broker, settlement service
provider and notary." (Second Am. Compl[4]. ¶ 172.)  As such
TRM handled all contact with the banks on behalf of the
Plaintiffs, who concede that they had little, if any direct
contact with the banks.  According to the Second Amended
Complaint, Plaintiffs assert that this arrangement allowed
TRM: "(i) to qualify purchasers for loans for which they

---

[3] U.S. Bankruptcy Court for the Eastern District of Virginia, Alexandria
Division Bankruptcy Petition #09-11938
[4] This document is titled "Amended Complaint", but is actually the
Second Amendment Complaint filed on May 1, 2009, subsequent to the
Original Complaint filed on November 20, 2008 and the First Amended
Complaint filed on January 15, 2009.

would not normally qualify; (ii) to create a mistaken belief in the purchasers that the transactions were legitimate fair market transactions; and (3)[sic] to facilitate significant financial inducements with which TRM could induce sales." (*Id.* ¶ 124.) Furthermore, with respect to the Banks, the Complaint

> [A]lleges that TRM rigged the appraisals relied on by the banks to value the land securing the loans—*the banks' collateral*—thus causing the banks to make under-collateralized loans, a feat TRM accomplished by allegedly orchestrating "sham transactions" through "straw purchasers" and by "flipping" lots at inflated sale prices to gin up inflated comparables. ([Second Am. Compl.] ¶¶ 118, 146, 154, 159-61, 167) The complaint alleges that, in the end, Plaintiffs paid TRM for the lots using bank funds from the mortgage loans—i.e., that TRM used the banks' money to finance its profit from this alleged illicit scheme. (*Id.* ¶ 122)

(BB&T Mem. Supp. Mot. Dismiss 1-2.). Plaintiffs also allege that they either did not receive Property Reports as required by the Interstate Land Sales Act, or that when reports were provided they were incorrect and/or missing information.

Plaintiffs have alleged the following counts against the defendants who have filed the Motions to Dismiss that are before the Court: 1) conspiracy to commit fraud (Cooperative/Willetts, Sun Trust, Carolina First); 2) civil

conspiracy to defraud (BB&T, Bank of America, Woodlands/Harris, Beach First); 3) North Carolina Unfair and Deceptive Trade Practices Act (Cooperative/Willetts, BB&T, Sun Trust, Bank of America, Maryville, Woodlands/Harris, Carolina First, Beach First); 4) South Carolina Unfair Trade Practices Act (SunTrust, Bank of America, Maryville, Carolina First, Beach First); 5) declaratory judgment promissory notes and deeds of trust void for illegality (Cooperative/Willetts, BB&T, SunTrust, Bank of America, Woodlands/Harris, Beach First, Carolina First); 6) revocation of contract pursuant to 15 U.S.C. §1703(c)—revocations within two (2) years (Bank of America, Carolina First, Cooperative, SunTrust, BB&T, Woodlands, and Beach First); 7) revocation of contract pursuant to 15 U.S.C. §1703(c)—revocations within three (3) years (Bank of America, Carolina First, Cooperative, SunTrust, BB&T, Woodlands, and Beach First); 8) damages pursuant to ILSA (Maryville).[5]

The original Complaint in this matter was filed on November 20, 2008.  Prior to the filing of an Answer by any Defendant , the First Amended Complaint was filed on January 15, 2009.  Several defendants filed motions to dismiss, in turn prompting the filing of the Second Amended

---

[5] These claims are also made against the defendants' trustees.

Complaint on May 1, 2009.[6]  This matter was consolidated

with *Abraham et al v. Total Realty Management*, et al

1:09cv6 on May 14, 2009.  The previously listed motions to

dismiss that are the focus of this opinion were filed

between May 28, 2009 and June 11, 2009.  The Court held

oral argument on all of the motions on July 1, 2009.

## II. DISCUSSION

### A. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion

should be granted unless an adequately stated claim is

"supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1969 (2007); *see* FED. R. CIV. P.

12(b)(6).  In considering a Rule 12(b)(6) motion, the Court

must construe the complaint in the light most favorable to

the plaintiff, read the complaint as a whole, and take the

facts asserted therein as true. *Mylan Lab., Inc. v.*

*Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to

the complaint, the court may also examine "documents

incorporated into the complaint by reference, and matters

---

[6] When several defendants filed an initial set of motions to dismiss,
Plaintiffs responded by filing a Motion for Leave to Amend the
Complaint.  The Court removed the pending motions to dismiss from the
active docket, to allow for the consideration of the motion for leave
to amend, and instructing the defendants to re-file their motions to
dismiss if leave to amend was granted and they believed that the
amended Complaint was still subject to dismissal.

of which a court may take judicial notice." *Tellabs, Inc.
v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509
(2007). "Conclusory allegations regarding the legal effect
of the facts alleged" need not be accepted. *Labram v.
Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the
central purpose of the complaint is to provide the
defendant "fair notice of what the plaintiff's claim is and
the grounds upon which it rests," the plaintiff's legal
allegations must be supported by some factual basis
sufficient to allow the defendant to prepare a fair
response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

**B. Analysis**

**1. Plausibility**

Defendants' Motions to Dismiss the Amended Complaint
are granted because the plaintiffs claims do not meet the
*Ashcroft v. Iqbal* plausibility standard required to survive
a motion to dismiss because the facts alleged on the face
of the complaint do not allow for a reasonable inference
that the defendants are liable to Plaintiffs for their
individual investment decisions. A pleading that states a
claim for relief must contain: (1) a short and plain
statement of the grounds for the court's jurisdiction; (2)
a short and plain statement of the claim showing that the
pleader is entitled to relief; and (3) a demand for the

relief sought, which may include relief in the alternative
or different types of relief.  FED. R. CIV. P. 8(a).  The
requirement that the Court take the facts in the light most
favorable to the plaintiffs on a motion to dismiss does not
obligate the Court to accept the legal conclusions drawn
from the facts.  *E. Shore Mkts. Inc. v. J.D. Assoc. Ltd.
P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  "Similarly, we
need not accept as true unwarranted inferences,
unreasonable conclusions, or arguments."  *Id.* (citing 5A
CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §
1357 (2d ed. 1990)).  The Supreme Court in *Iqbal*, has
recently enunciated the following plausibility requirement
for motions to dismiss:

> To survive a motion to dismiss, a
> complaint must contain sufficient
> factual matter, accepted as true, to
> "state a claim to relief that is
> plausible on its face."  A claim has
> facial plausibility when the plaintiff
> pleads factual content that allows the
> court to draw the reasonable inference
> that the defendant is liable for the
> misconduct alleged.  The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than
> a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint
> pleads facts that are "merely consistent
> with" a defendant's liability, it "stops
> short of the line between possibility
> and plausibility of 'entitlement to
> relief.'" . . . [W]here the well-pleaded
> facts do not permit the court to infer
> more than the mere possibility of

12

misconduct, the complaint has alleged-
but it has not "shown"-"that the pleader
is entitled to relief."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009)(internal
citations omitted).

Plaintiffs claim as a threshold matter that the Banks
colluded with TRM, corrupt real estate appraisers and bank
loan officers to arrange for unsuspecting investors to
enter into loans the investors could never pay, in land
they could never sell, that was overvalued; and now that
TRM has declared bankruptcy, that the Banks must charge off
the investor loans and repay the investors. What does the
bank get out of this, loan fees, foreclosed upon unimproved
land to carry on their books? To the extent that Plaintiffs
have essentially alleged that the banks and Maryville were
in cahoots with TRM, as the basis for liability these
allegations are simply implausible. The facts as alleged
do not allow for an inference that the aforementioned
parties were co-conspirators or that they were in an agency
relationship. The Second Amended Complaint alleges that
"[t]he fact that Bank of America, Carolina First,
Cooperative and Beach First each stopped lending funds for
TRM sales after they became aware of loan origination and
underwriting failures and/or of flawed appraisals evidences
the banks' awareness that the loans had been improperly

13

originated, underwritten and/or appraised." (Second Am.
Compl. ¶ 562.)  This allegation if accepted as true, fails
to lead to the conclusion presented by Plaintiffs.  In fact
the logical conclusion would be the exact opposite—that the
banks ceasing to work with TRM upon becoming aware of these
alleged deficiencies, evidences that they were previously
unaware of what was going on, not that the banks and TRM
were working together.  This is especially true, in light
of the Complaint's utter failure to allege how the banks
entering into a scheme to make under-collateralized loans
would be in their self-interest.[7]  In their Oppositions to
these Motions, Plaintiffs claim that the banks provided
financial incentives to their employees for closing large
numbers of loans, and that these employees' motives and
actions may be imputed to the banks on a *respondeat
superior* theory of liability.  However not only are these
allegations completely unsupported, they are not mentioned
in the Second Amended Complaint, the sole point of
examination for the Court on a motion to dismiss.

---

[7] *See generally*, *Robertson v. First Union Nat'l Bank*, 350 S.E.2d 309,
315 (S.C. App. 2002)(upholding trial court's grant of summary judgment
with respect to South Carolina Unfair Trade Practices Act claim,
stating that, "we can think of no logical reason why Bank would make it
a practice to intentionally make loans for an amount in excess of the
collateral's value and risk substantial losses in the event of
default.")

Furthermore with respect to the agency relationships alleged by Plaintiffs, the Court first and foremost finds these insufficient because not only is the Second Amended Complaint, completely devoid of any factual allegations that the banks or Maryville exercised any control or authority over TRM, but it also fails to allege that or how TRM was acting in the interest of the banks or Maryville. These are essential elements required to demonstrate an agency relationship that are absent from the pleadings. These allegations are required to meet the *Iqbal* standard of pleading facts that constitute more than a mere possibility that an agency relationship existed between the parties. The same can be said for Plaintiffs efforts to impute knowledge from TRM to Southeastern to Maryville

2. Interstate Land Sales Act

i. The Banks

The Court grants the banks' Motions to Dismiss the claims arising under the Interstate Land Sales Act because the Act applies to developers, not financial institutions, and the Second Amended Complaint fails to present plausible allegations that the banks actively participated in and aided the advancement of the alleged fraudulent scheme so as to justify considering these financial institutions developers for purposes of establishing liability under the

Act.  ILSA only regulates "developers" of subdivisions, and limits liability to "developers" and their "agents."  15 U.S.C. § 179.  Section 1701 defines a "developer" as "any person who, directly, or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  15 U.S.C. § 1701(5).  It defines an agent as "any person who represents or act for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision."  15 U.S.C. § 1701(6).

    "Enacted in 1968 as part of a comprehensive housing statute the Interstate Land Sales Full Disclosure Act is a consumer protection statute designed to prohibit and punish fraud in land development enterprises. *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975); Public Law 90-488, 82 Stat. 476."  *Bartley v. Merrifield Town Center, Ltd. P'shp*, 580 F.Supp. 2d 495, 498 (E.D.Va. 2008).  "The Act was prompted by disclosure at Senate hearings of gross abuses by promoters of undeveloped land . . . . The Act is aimed at 'get rich quick promoters' who bilked purchasers . . . ."  *Cumberland Capital Corp. v. Harris*, 621 F.2d 246, 249-50 (6th Cir. 1980).  In *Cumberland*, a lending institution sought a declaratory judgment that it was not a "developer" for purposes of the Act.  There the court

> [H]eld that a lending institution which occasionally took mortgages or deeds of trust on unimproved lots as security for loans and which then foreclosed upon the default of borrowers according to the terms of the loan agreement, and which sometimes purchased the foreclosed property at the foreclosure sale and offered it for resale was not a developer under the Act. The court came to this conclusion based on the following: (1) none of the tracts of land in question was altered or improved while owned by the lending institution; (2) the land was not replatted or subdivided; and (3) the lending institution's involvement in the land sale was undertaken only as necessitated by the defaulting borrower, and was occasional and incidental in nature.

*Hammar v. Cost Control Mktg. & Sales Mgmt. of Va.*, 757 F.Supp. 698, 702 (W.D. Va. 1990). The few courts who have examined the question of if and/or when a lending institution may be considered a developer under the Act have relied heavily on the opinion issued in *Timmreck v. Munn.* 433 F.Supp. 396 (N.D. Ill. 1977).[8] In *Timmreck*, the court delineated the following circumstances where a financial institution may be considered a developer for purposes of the Act, namely where a bank "exceed[s] the

---

[8] The exemption carved out in *Timmreck* has never been adopted by the Court of Appeals for the Seventh Circuit, nor has it been adopted by the Fourth Circuit. This opinion therefore is not a precedential authority and neither binding nor advisory in this Court. Thus, while the exception carved out in *Timmreck* has not been acknowledged in this Circuit, the Court pauses to examine it briefly, as the principal authority for any such exception.

normal scope of financing practices and actively
participate[s] in and aide[s] the advancement of a
fraudulent scheme . . . ." 433 F.Supp. at 406.  The Court
finds that Plaintiffs have insufficient facts to find the
banks liable under the ILSA based on the exception carved
on in *Timmreck*.  Alternatively with respect to the claims
for rescission, even if the banks were subject to suit
under the ILSA, Plaintiffs seek rescission of the contract
while simultaneously acknowledging an unwillingness to
render what they have received.  This is impermissible and
if the ILSA were applicable to the defendants, Plaintiff's
unwillingness to do their part to reestablish the status
quo precludes any relief in the form of rescission of the
contract.  *See Am. Mortgage Network, Inc. v. Shelton*, 486
F.3d 815, 821 (4th Cir. 2007) (finding rescission
inappropriate where lenders unable to tender loan
proceeds).

Here the plaintiffs have asserted the following claims
under ILSA: 1) promissory notes and deeds of trust are void
for illegality under 24 C.F.R. §§ 1715.1 and 1715.2; 2)
revocation/rescission of contracts pursuant to 15 U.S.C. §
1703(c); and 3) damages under 15 U.S.C. § 1703(a)(1) &
(2)(B) & (C).  Not only is there insufficient common law or
statutory authority to support a finding that an exemption

18

permitting liability for lending institutions exists under
the Act, even if it did Plaintiffs have not alleged
sufficient facts to support the application of such an
exemption.  The circumstances that precluded application of
the Act to lending institutions in *Cumberland* exist here as
well.  Plaintiff has failed to allege sufficient facts to
allow the Court to infer that the banks that are the
targets of these allegations have gone beyond standard
industry practices with respect to real estate
transactions.  Therefore, the Court dismisses the Counts of
the Second Amended Complaint brought against the banks
under the ILSA, because the Act does not apply to lending
institutions, the authority for an exemption for lending
institutions that exceed standard industry practices is
minimal, and the allegations in support of such an
exemption are insufficient.

ii. Maryville

The Court dismisses the ILSA claim against Maryville[9] because it is insufficient and flawed on its face to the extent that it relies on an implausible agency theory. Plaintiffs have simultaneously alleged that Southeastern were agents of both TRM and Maryville, without sufficiently addressing issues of control and/or conflicting interest. Plaintiffs have imputed knowledge of TRM's activities to Maryville via Southeastern without any supporting facts or plausible rationale. The Court is not required to accept unsupported legal conclusions without facts. For these reasons, the Court holds that Plaintiffs have failed to state a claim against Maryville under the ILSA and Maryville's Motion to Dismiss is granted.

3. Fraud

The Court grants the Defendants' Motion to Dismiss the conspiracy to commit fraud and civil conspiracy to defraud claims against the banks because corporations cannot conspire with their agents, the claims are not plead with sufficient particularity to comport with Rule 9(b), and Plaintiffs have failed to allege facts that would support a finding that a meeting of the minds occurred as is required

---

[9] Maryville did not request dismissal of this claim against them under Rule 12(b)(6), however the Court may do so sua sponte. The parties not only argued this issue of agency in their briefs, but also significant time and energy was devoted to this issue at oral argument.

to support a conspiracy claim.[10]  "A civil conspiracy requires an object to be accomplished, a meeting of minds on the object or course of action, one or more overt acts, and damages as the proximate result thereof."  16 AM. JUR. 2D *Conspiracy* § 51 (2009).  "To establish a prima facie fraud claim, the plaintiff must prove the following elements by clear and convincing evidence: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) resulting in injury or detrimental reliance."  37 AM. JUR. 2D *Fraud and Deceit* § 475 (2009).[11]

The Court dismisses the conspiracy counts for failure to state a claim because Plaintiffs have alleged that the banks conspired with TRM who were serving as agents of the banks at the time of the conspiracy.  This is a fatal flaw because "[t]he doctrine of intracorporate immunity . . . recognizes that a conspiracy 'requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of

---

[10] Plaintiffs have alleged conspiracy to commit fraud against some of the banks and civil conspiracy to defraud against others.  The allegations set forth in support of these claims are essentially identical, and the Court therefore addresses them together.
[11] The parties disagree as to whether Virginia or North Carolina law governs these claims.  The Court' resolution of the motions to dismiss the conspiracy claims does not require a choice of law analysis because the claims can be dismissed on more general grounds that do not pertain to any particular state's law.  Therefore the Court has merely stated the general elements of these claims in its analysis.

conspiracy.'" *SecureInfo Corp. v. Telos Corp.*, 387
F.Supp.2d 593, 616 (E.D.Va. 2005)(quoting *Lewin v. Cooke*,
95 F.Supp.2d 513, 524 (E.D.Va. 2000). When confronted with
this issue at oral argument, Plaintiffs' counsel suggested
pleading in the alternative that TRM is an agent or that
TRM is a co-conspirator and presenting a jury instruction
as to which theory of recovery the jury was proceeding on.
Mot. Dismiss Hr'g Tr. 104-05 July 1, 2009.

The Defendants Motion to Dismiss is granted for
several reasons. First it is unclear which actual counts
that Plaintiffs proposes to plead in the alternative. The
Court is left wondering which counts Plaintiffs propose to
abandon if the Court or a jury finds that no agency
relationship exists so as to allow Plaintiffs to proceed
with the conspiracy theory. Second, there was no
indication in the multiple Complaints or the hundreds of
pages of pleadings filed that Plaintiffs intended to plead
in the alternative. Although there is a right to plead
claims in the alternative, "[t]he right to plead
alternatively or hypothetically does not sanction
deviations from the basic obligation to plead
comprehensibly. Indeed, it is in the context of
alternative and hypothetical pleading that a party must
exercise the greatest case so as not to transgress the

22

requirement of Rule 8(e)(1) of simple, direct and concise pleading." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1282 (3d ed. 2004). The Court finds Plaintiffs' impromptu proposal of alternative pleading insufficient to save these claims from dismissal, because it would fail to meet the aforementioned pleading requirements established in Rule 8.

Third, the Court grants the motion to dismiss the conspiracy counts against the banks because the Complaint fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b) because the Complaint groups the banks together with broad brush allegations instead of making specific factual allegations against individual defendants. Under Federal Rule of Civil Procedure 9(b) "the circumstances required to be pled with particularity . . . are the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. *Harrison v. Westinghouse Savannah River Co.*,176 F.3d 776, 784 (4th Cir. 1999); FED. R. CIV. P. 9(b). Rule 9(b) applies to allegations of conspiracy to defraud. *Harrison*, 176 F.3d at 790. Pages 67 through 72 of the Second Amended Complaint addressing the allegations of fraud with respect to the banks, refer almost exclusively to the "Bank

Defendants". In the rare instances where individual
employees are named, the allegations with respect to their
actions are bare. "Rule 9(b) requires that allegations of
fraud be pled with specificity [and] [g]rouping defendants
together in a pleading fails to satisfy the requirement
that the who, what, when, where, why and how, be pled with
specificity." *Iron Workers Local 16 Pension Fund v. Hilb
Rogal & Hobbs Co.*, 432 F.Supp.2d 571, 579 (E.D.Va. 2006).
The dirth of specific allegations against individual
defendants that would satisfy the exacting requirements of
Rule 9(b) with respect to allegations of fraud further
supports the dismissal of these claims against the banks.

Fourth and finally, the Court dismisses the conspiracy
claims against the banks, because the Second Amended
Complaint is devoid of facts that suggest a meeting of the
minds and not mere parallel conduct.

> Asking for plausible grounds to infer an
> agreement does not impose a probability
> requirement at the pleading stage; it
> simply calls for enough facts to raise a
> reasonable expectation that discovery
> will reveal evidence of illegal
> agreement . . . [A]n allegation of
> parallel conduct and a bare assertion of
> conspiracy will not suffice. Without
> more, parallel conduct does not suggest
> conspiracy, and a conclusory allegation
> of agreement at some unidentified point
> does not supply facts adequate to show
> illegality. Hence, when allegations of
> parallel conduct are set out in order to

> make a [conspiracy] claim, they must be
> placed in a context that raises a
> suggestion of a preceding agreement, not
> merely parallel conduct that could just
> as well be independent action.

*Twombly*, 550 U.S. at 556-57. Nothing in the Second Amended

Complaint elevates the allegations from possible parallel

conduct to an indication that there was an actual meeting

of the minds. Plaintiffs have only asserted bare

allegations of conspiracy. Allegations that would allow

the Court to conclude that it is plausible that the parties

engaged in the alleged conspiracy are absent. Therefore,

the Court dismisses the conspiracy allegations against all

of the banks because the intracorporate immunity doctrine

precludes alleging a conspiracy between a corporation and

its agents, the group pleading employed in the Second

Amended Complaint does not comply with the specificity

requirements for allegations of fraud under Rule 9(b), and

there are insufficient allegations from which to infer a

meeting of the minds and not mere parallel conduct as

required to maintain a claim for conspiracy.

    4. Unfair Trade Practices

    The Court grants the banks and Maryville's Motions to

Dismiss Plaintiff's claims under the North Carolina Unfair

and Deceptive Trade Practices Act ("NCUDTPA") and the South

Carolina Unfair Trade Practice Act ("SCUTPA") because North

Carolina is not the place of the wrong for any of the
plaintiffs, therefore that state's law is inapplicable, for
the few plaintiffs for whom South Carolina is the place of
the wrong, their claims are subject to dismissal because
they cannot show that the defendants actions adversely
affected the public interest as required to state a claim
under the South Carolina Act, for the many plaintiffs whose
alleged injury occurred in Virginia, their claims are not
recognized under Virginia law, and to the extent any of the
remaining plaintiffs suffered any injury in another state
not previously mentioned, the Complaint does not allege
unfair trade practices under any other states' laws.
"Virginia choice of law rules govern tort actions filed in
the Eastern District of Virginia." *Dominican Republic v.
AES Corp.*, 466 F.Supp.2d 680, 693 (E.D. Va. 2006).
"Virginia applies the *lex loci delicti*, the law of the
place of the wrong, to tort action." *Milton v. IIT
Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). Under
Virginia law, "[t]he place of the wrong or injury is the
place where the injury was suffered, not where the tortuous
act took place." *Rahmani v. Resorts Int'l Hotel, Inc.*, 20
F.Supp.2d 932, 937 (E.D. Va. 1998).

Plaintiffs argue that North and South Carolina unfair
trade practices laws govern their claims because the

defendants' liability is based largely on
misrepresentations made by TRM, and although those
representations largely occurred in Virginia, the last acts
in reliance on the representations occurred in North or
South Carolina where the closings on the properties took
place. Plaintiffs' position is based on the belief that
once settlement took place they became legally bound on
overvalued properties.[12] Defendants respond first by noting
that few, if any of the plaintiffs actually attended the
closings on these properties or even visited the states
where the properties were located in conjunction with their
purchases. Furthermore, Defendants position is that in
torts resulting in economic loss, the place of the injury
is the home state of the victim, where the alleged economic
loss is sustained.

For the purposes of a 12(b)(6) motion the Court takes
the facts alleged in the Complaint as true. Therefore,
assuming that an injury was sustained by the plaintiffs, it
took place in their home states, where the financial injury
took place. Payments for overvalued property were made
there. This Court reached a similar conclusion in *Insteel*

---

[12] Plaintiffs have also alleged with respect to certain Defendants that
the contract between the parties contained a choice of law provision
selecting North Carolina law to govern any disputes between them,
however Plaintiffs have failed to allege the terms of these contracts
in their Second Amended Complaint nor have they provided said contracts
as exhibits.

*Industries, Inc. v. Costanza Contracting Co.*, where the plaintiff brought suit under the North Carolina Unfair and Deceptive Trade Practices Act based on flawed invoices issued by the defendant that the plaintiff allegedly relied on to its detriment. 276 F.Supp.2d 479 (E.D. Va. 2003). There, the Court held that,

> [T]he allegedly unfair or deceptive acts (the invoices containing the alleged intentional misrepresentations) caused Insteel's injury, if at all, when Insteel relied on the invoices to its detriment. Both reliance (Watt's review of each invoice) and the detriment (Insteel's issuance of checks in full payment of each invoice) occurred in North Carolina. Therefore, the place of the injury is undoubtedly in North Carolina.

*Id.* at 488. Therefore, the Court concludes that the place of the injury is each plaintiff's state of residence[13] for the purposes of claims of unfair and deceptive trade practices.

The vast majority of the plaintiffs reside in Virginia. The Virginia Consumer Protection Act ("VCPA") declares unlawful the use of any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200(14).

---

[13] None of the plaintiffs are residents of North Carolina. Therefore none can maintain claims under the North Carolina Unfair and Deceptive Trade Practices Act.

However, banks and mortgage lenders[14] are exempt from suit under the VCPA. VA. CODE ANN. § 59.1-199(D). Plaintiffs have failed to assert claims under the VCPA, and such claims would be untenable against the banks in this litigation.

Two of the plaintiffs[15] are actually South Carolina residents. Presumably the place of their injury is in fact South Carolina. To prevail on a claim under the South Carolina Unfair Trade Practices Act[16], a plaintiff must show by a preponderance of the evidence:

> "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). The third element may be satisfied by proof of "facts demonstrating the potential for repetition of the defendant's actions." *Daisy Outdoor Advertising Co. v. Abbott*, 322 S.C. 489, 493 (1996). "Plaintiffs generally have shown potential for repetition in two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absence deterrence or (2) by showing the company's procedures create a potential for repetition of the unfair and

---

[14] Mortgage lender is defined in VA. Code Ann. § 6.1-409.
[15] There are two plaintiffs, but they are spouses who together purchased only one piece of property.
[16] S.C. CODE. ANN. § 39-5-20.

> deceptive acts." *Id.* at 496. In
> focusing on the defendant's past
> actions, South Carolina courts have
> looked at the harm to the people of
> South Carolina caused by the challenged
> practice. "The legislature intended in
> enacting the UTPA to control and
> eliminate the large scale use of unfair
> and deceptive trade practices within the
> state of South Carolina." *Noack Enters.*
> *Inc. v. Country Corner Interiors*, 290
> S.C. 475, 477 (S.C. Ct. App. 1986).
> Public harm "must be proved by specific
> facts." *Jefferies v. Phillips*, 316 S.C.
> 523, 527 (S.C. Ct. App. 1994).

*Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 152
Fed. Appx. 317, 320 (4th Cir. 2005). In a factually
similar case, the Court of Appeals of South Carolina
affirmed a trial court determination that allegations that
a bank allegedly made loans secured by insufficient
collateral did not constitute an unfair act or practice
that affected the public interest. *Robertson*, 350 S.C. at
350-51. This Court adopts the analysis of the *Robertson*
court. Insufficient allegations have been made to begin to
state a claim that the practices at issue affect the public
interest and not merely a small group of individuals. The
Court therefore grants the banks and Maryville's Motions to
Dismiss the NCUDTPA and SCUPTA claims because the place of
the wrong is the state of residence of the plaintiff, there
are no plaintiffs who are North Carolina residents, the two
South Carolina plaintiffs have not alleged facts to support

30

a finding that the alleged practices affect the public interest, any plaintiffs who reside in Virginia cannot bring a claim against the banks under the VCPA because the statute precludes such claims against banks, and allegations of unfair or deceptive trade practices have not been alleged under any other states' statutes.

### 5. Dismissal

The Court grants dismissal with prejudice and without leave to amend because Plaintiffs have already devoted multiple efforts and hundreds of pages to attempting to sufficiently plead their claims and set forth the necessary and relevant facts. In case number 1:08cv1212, three (3) complaints were filed—a twenty-one (21) page Complaint on November 20, 2008, a seventy-one (71) page First Amended Complaint on January 15, 2009, and a 326 page Second Amended Complaint on May 1, 2009.[17] On May 14, 2009, the 1:08cv1212 case was consolidated with 1:09cv6. In 1:09cv6, a 302 page Complaint was filed on January 5, 2009. All of these complaints were drafted by the same attorneys asserting related claims. At the July 1, 2009 hearing, the Court raised this issue with Plaintiffs' counsel, indicating the multiple drafting efforts made, and asked

---

[17] The May 1, 2009 Second Amended Complaint was filed after the banks filed an initial set of motions to dismiss, and the Plaintiffs were granted leave to amend in an effort to attempt to address some of the issued raised by Defendants.

31

Counsel if he had pled all of the information that they
possessed that was pertinent to this litigation and counsel
responded affirmatively.  Mot. Dismiss Hr'g Tr. 74 July 1,
2009.  Finality is important to litigation and litigants.
Plaintiffs are required to possess sufficient information
to state a claim when they commence litigation, so as to
avoid fishing expeditions.[18]  Plaintiffs are in a desperate
situation, they assert they were misled into an investment
that went bad and they lost their investment opportunity.
Entrepreneurship and investments are fraught with risks--
risks of fraud, risks that the putative defendant TRM would
enter bankruptcy, and risk that the so-called investment
that was "too good to be true" was not what the investor
thought it would be.  Counsel for Plaintiffs have made a
diligent effort to assert the claims, however, the
assertions fall short and do not state a claim as a matter
of law.  Given the multiple attempts that Plaintiffs have
had to sufficiently set forth their allegations in three
tries, this Court is of the opinion that further leave to
amend is futile, and therefore the dismissal is with
prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[18] The Court is painfully cognizant that the plaintiffs are presently
unable to recover against the TRM defendants who were the principal
players in this alleged investment scheme.

### III. CONCLUSION

The Court grants the Defendants Motions to Dismiss the Amended Complaint because the claims asserted are implausible and fail to state a claim.  For the foregoing reasons it is hereby

ORDERED that Defendants Cooperative Bank for Savings and Frederick Willetts, III's Motions to Dismiss (#77) Counts XXVIX (conspiracy to commit fraud), XXVII (North Carolina Unfair and Deceptive Trade Practices Act), XXVIII (declaratory judgment promissory notes and deeds of trust void for illegality) are GRANTED.  It is further

ORDERED that Defendants Branch Banking & Trust Co. of South Carolina and BB&T Collateral Service Corporation, Trustee's Motions to Dismiss (#87) Counts I (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within two years), II (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within three years), XXXVI (civil conspiracy to defraud), XXXIV (North Carolina Unfair and Deceptive Trade Practices Act), XXXV (declaratory judgment promissory notes and deeds of trust void for illegality) are GRANTED.  It is further

ORDERED that Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss (#90) Counts XXX (North Carolina Unfair and Deceptive Trade Practices Act), XXXI (South Carolina

Unfair Trade Practices Act), XXXII (declaratory judgment promissory notes and deeds of trust void for illegality), and XXXIII (conspiracy to commit fraud) is GRANTED.  It is further

ORDERED that Defendants Bank of America, N.A. and Prlap, Inc's Motion to Dismiss (#93) Counts I (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within two years), II (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within three years), XIX (North Carolina Unfair and Deceptive Trade Practices Act), XX (South Carolina Unfair Trade Practices Act), XXI (declaratory judgment promissory notes and deeds of trust void for illegality) and XXII (civil conspiracy to defraud) are GRANTED.  It is further

ORDERED that Defendant Maryville Partners, Inc.'s Motion to Dismiss (#94) Counts XII (damages pursuant to ILSA), XIII (North Carolina Unfair and Deceptive Trade Practices Act), and XIV (South Carolina Unfair Trade Practices Act) is GRANTED.  It is further

ORDERED that Defendants Woodlands Bank and John T. Harris, Trustee's Motions to Dismiss (#104) Counts I (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within two years), II (revocation of contract pursuant to 15 U.S.C. §1703(c)- revocations within three

years) Counts XXXIX (civil conspiracy to defraud), XXXVIII
(declaratory judgment promissory notes and deeds of trust
void for illegality), XXXVII (North Carolina Unfair and
Deceptive Trade Practices Act) are GRANTED.  It is further

ORDERED that Defendants Beach First National Bank and
Carolina First Bank's Motions to Dismiss (#125) is GRANTED.
With respect to Carolina First Bank the Court dismisses
Counts: XXVI (civil conspiracy to commit fraud) XXIII
(North Carolina Unfair and Deceptive Trade Practices Act),
XXIV (South Carolina Unfair Trade Practices Act), XXV
(declaratory judgment promissory notes and deeds of trust
void for illegality).  With respect to Beach First National
Bank the Court dismisses Counts: XLIII (civil conspiracy to
defraud), XL (North Carolina Unfair and Deceptive Trade
Practices Act), XLI (South Carolina Unfair Trade Practices
Act), and XLII (declaratory judgment promissory notes and
deeds of trust void for illegality) are GRANTED.  It is
further

ORDERED that these claims are DISMISSED WITH PREJUDICE.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 28th day of August, 2009.


Alexandria, Virginia                    _____/s/_____

08/ 28 /09                              Gerald Bruce Lee
                                        United States District Judge

.

36